IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM KEITH LANEGAN, individually and/or in his capacity as ADMINISTRATOR and/or EXECUTOR of the ESTATE OF ROGER RAY LANEGAN,<br><br>          Plaintiff,<br><br>    v.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA, a/k/a UNUM GROUP, a/k/a UNUM PROVIDENT, et al,<br><br>          Defendants. | CIVIL ACTION<br><br>NO. 16-1706 |

**<u>MEMORANDUM OPINION</u>**

**Schmehl, J.   /s/ JLS**                                   **February 10, 2017**

Before the Court are the motions to dismiss, or in the alternative, for summary

judgment, of Defendants, Unum Life Insurance Company of America, Ruth Freeman and

Advance Billing, LLC and Daimler Trucks North America, LLC, and Freightliner

Affiliates Retirement Savings Plan. Plaintiff, William Keith Lanegan, individually and/or

in his capacity as Administrator and/or Executor of the Estate of Roger Ray Lanegan

("Lanegan" or "Plaintiff") has opposed the motions, Defendants have filed replies and

supplemental briefing was permitted. Having read the parties' extensive briefs and after

oral argument on the motions, I will grant Defendants' motions to dismiss and dismiss

Plaintiff's Complaint with prejudice.

## I.       <u>BACKGROUND</u>

Plaintiff filed this action against Defendants to contest a claim determination

under an ERISA-governed life insurance benefits plan. Plaintiff takes issue with Unum's

determination that his two sons, rather than Lanegan himself, were the proper

beneficiaries of two life insurance policies insuring the life of Lanegan's father, a Plan participant who died in January of 2005. In short, Lanegan alleges that Unum incorrectly relied on a beneficiary designation form naming his two sons that was allegedly fraudulently created by his former wife, Defendant Ruth Freeman.

## II.   **STATEMENT OF FACTS**

Lanegan's father, Roger Ray Lanegan, passed away on or before January 15, 2005. (Compl. at ¶¶ 16-19.) At the time of his death, Roger Lanegan was employed by Freightliner LLC and/or American LaFrance and participated in an ERISA-governed plan (the "Plan") that provided life insurance benefits through two Unum Life polices, policy numbers 28915 and 28916 (the "Policies"). (Compl. at ¶¶ 20-21.)

According to the Complaint, on February 12, 2005, after Roger Lanegan's death, Unum sent Lanegan a letter confirming that a claim for benefits under Policy 28915 had been submitted "on behalf of minor child, Aaron Lanegan." (Compl. at ¶ 25, Exh. E.) This letter set out that benefits were approved for Aaron, but that Unun would hold the proceeds until Aaron reached 18 or a court-appointed guardian requested the benefits. (Id.)

Lanegan did not arrange for nor direct these benefits to be distributed to his son Aaron. (Compl. at 26, 29.) Lanegan claims that he should have received the benefits in question, but that they were improperly awarded to his sons. (Id. at ¶¶ 29, 46, 47 and 50.) Thereafter, in September of 2009, Lanegan contacted Unum and requested clarification on the distribution of benefits to his sons, as Lanegan believed that he alone was the beneficiary on the policies as designated by Roger Lanegan. (Id. at ¶ 31.) On September 11, 2009, Tracy McKenzie, an employee of Unum, informed Lanegan via email that the

2

benefits were paid according to a January 20, 2005 on-line beneficiary designation form from Roger Lanegan's employer. (Compl. at ¶ 32, Exh. G.) Lanegan alleges that his former spouse, Defendant Freeman, fraudulently prepared the January 2005 beneficiary designation using his father's online account passwords for his employer's online system. (Compl. at ¶¶ 33-37, 40.)

On March 13, 2015, Unum sent Lanegan a letter confirming its decision that Lanegan was not the beneficiary under the Policies, and denying his claim for benefits. (Compl. at ¶ 41, Ex. K.) On March 19, 2015, Lanegan appealed Unum's decision, and his appeal was denied on April 14, 2015 because it was untimely. (Compl. at ¶¶ 42-43, Exs. L and M.) Lanegan then filed the instant action on April 11, 2016.

### III.    STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts that " 'raise a right to relief above the speculative level.' " Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir.2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007.) In determining whether a complaint is sufficient, the court must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).

Although "conclusory" or "bare-bones allegations" will not survive a motion to dismiss, Fowler, 578 F.3d at 210, a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits. Phillips, 515 F.3d at 231. Nonetheless, to survive a Rule 12(b)(6) motion, the

complaint must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Id. at 234 (quoting Twombly, 550 U.S. at 556) (internal quotations omitted).

## IV.   **DISCUSSION**

Defendants move to dismiss Plaintiff's Complaint as time-barred by the statute of limitations and the Policies' contractual limitation of action provisions. Defendant Freeman also moves to dismiss the Complaint because she and her company, Advanced Billing, LLC, are not fiduciaries under ERISA and are not the ERISA plan. For the reasons that follow, I will grant Defendants' motions and will dismiss Plaintiff's Complaint with prejudice.

### A.  Claim for Denial of Benefits

ERISA does not contain a statute of limitations for non-fiduciary claims. For claims such as these, the applicable statute of limitations is that of the forum state claim most analogous to the ERISA claim at issue. Miller v. Fortis Benefits Ins. Co., 475 F.3d 516, 520 n.2 (3d Cir. 2007); Gluck v. Unisys Corporation, 960 F.2d 1168, 1179-1180 (3d Cir. 1992). A claim for denial of benefits under ERISA is most analogous to a breach of contract claim, therefore Pennsylvania's four year statute of limitations for breach of contract claims will apply here. Christian v. Honeywell Retirement Benefit Plan, 582 Fed. Appx. 103, 104 (3d Cir. 2014).

In the ERISA context, a non-fiduciary cause of action will generally accrue when a party's claim for benefits has been formally denied. See Romero v. Allstate Corp., 404 F.3d 212, 222 (3d Cir.2005). Under the "clear repudiation" rule, however, an "event other than a denial" can trigger the statute of limitations, "as long as it is (1) a repudiation (2)

that is clear and made known to the beneficiary." <u>Miller v. Fortis Benefits Ins. Co.</u>, 475 F.3d 516, 521 (3d Cir.2007). "Under this rule, a statute of limitations begins to run when a plaintiff discovers or should have discovered the injury that forms the basis of his claim." <u>Id.</u> at 520 (citing <u>Romero</u>, 404 F.3d at 222). "Some 'event other than a denial of a claim' may trigger the statute of limitations by clearly alerting the plaintiff that his entitlement to benefits has been repudiated." <u>Miller</u>, 475 F.3d at 521 (citation omitted). In <u>Miller</u>, the court concluded that a plaintiff who had been underpaid for fifteen years before discovering the error was sufficiently made aware that he was underpaid and that his right to a greater award had been repudiated when he received the first check for the lower amount. <u>Id.</u> at 520-23; *see also* <u>Christian v. Honeywell Retirement Benefit Plan</u>, 582 Fed. Appx. 103, 104 (3d Cir. 2014) (finding that a clear repudiation occurred at the time of a full termination of benefits); <u>Hill v. Connecticut General Life Ins. Co.</u>, 2008 WL 4200161 at *4 (W.D Pa., Sept. 8, 2008) (finding that a defendant's alleged failure to make any payment for plaintiff's benefit qualifies as a repudiation).

Therefore, to determine whether Lanegan's claim was filed after the expiration of the statute of limitations, I must determine when a "clear repudiation" of his claim to benefits occurred. Based solely on the complaint, there are several possibilities as to when Lanegan received a clear repudiation of his claim for benefits. Under any one of these possibilities, Lanegan failed to initiate the instant matter in time to avoid the application of the statute of limitations.

The first possibility for when Lanegan's claim accrued was in February of 2005 when he received a letter from Unum telling him that one of his sons was a beneficiary, and Lanegan failed to receive any death benefits under either Policy. The second

possibility would be Unum's September 11, 2009 email confirming that the claim had been processed and paid according to the January of 2005 Beneficiary Designation. Pursuant to this email, Unum was refusing to pay Lanegan benefits to which he believed he was entitled. Certainly, this was a "clear repudiation" of his claim to benefits. Under either scenario, Lanegan should have filed suit by February of 2009 or September of 2013, which he failed to do, as he did not institute this suit until April 11, 2016.

In his attempts to avoid the application of the statute of limitations, Plaintiff first argues that there was no clear repudiation of his claim until April 14, 2015 when Unum refused to consider Lanegan's administrative appeal. Plaintiff bases this argument upon his belief that "actionable harm did not befall the Plaintiff until Defendant Unum wrongfully distributed money to someone else – in this case, on or about March 23, 2015 at the earliest, when Plaintiff's oldest son, Sean Lanegan, finally turned 18 years old." (See Docket No. 18, p. 8.) Plaintiff argues that under relevant Third Circuit case law, the statute of limitations does not begin to run until the actual provision of money was made, claiming that in Miller v. Fortis Ins. Co. and its progeny, the courts ruled that "Plaintiffs were blatantly repudiated because they had explicit notice that they were receiving less money than they should have been." (Docket No. 18, p. 8.) Lanegan's argument is that since he did not receive any money at all, no actionable harm occurred until Unum distributed the proceeds of the policies to his oldest son. I find this argument to be very unpersuasive.

First, as discussed above, the clear repudiation rule does not require a formal denial of benefits; rather, it only requires a clear repudiation of Lanegan's claims. Miller, 475 F.3d at 521. Courts have held that a clear repudiation under ERISA can occur long

before any benefits are actually distributed. <u>See</u> <u>Bamgbose v. Delta-T Group, Inc.</u>, 638 F.Supp.2d 432 (E.D. Pa. 2009) (finding that the claim of plaintiffs who sought ERISA benefits claiming they were wrongfully characterized as independent contractors who were not entitled to benefits was time-barred because the independent contractor agreements that they signed ten years earlier had clearly repudiated any claim to benefits.)

Further, Lanegan's argument that an actual payment of benefits is necessary before a claim can be repudiated also conflicts with the underlying goals of the statute of limitations. Specifically, the <u>Miller</u> court stated:

> [A] statute of limitations not based on reasonable discovery is effectively no limitation at all. Such would be the case if we held that Miller's cause of action accrued only upon Fortis' formal denial of his adjustment claim. Under this rule, a plaintiff could receive benefit checks for decades before deciding to investigate the accuracy of his award – a plaintiff could thereby trigger the statute of limitations at his own discretion, creating an indefinite limitations period. We decline to invite such a result.

<u>Miller</u>, 475 F.3d at 522. Clearly, Lanegan's argument in this matter that the statute of limitations on his claim was tolled until his oldest son actually received benefits under the Policies is in conflict with <u>Miller</u> and its desire to avoid an indefinite limitations period. That argument in light of the facts of this case clearly lacks merit.

Further, I find that Lanegan's argument fails as it misinterprets the harm that he allegedly suffered as a result of Unum's actions. Plaintiff claims the actionable harm is the wrongful distributions of money under the Policies that occurred in March of 2015. The receipt of benefits by his son is not the "harm" that Lanegan allegedly suffered. To the contrary, the "harm" was Unum's decision that Lanegan was not a beneficiary under the Policies and should not receive any benefits. This indeed was the ultimate harm.

Unum's decision in this regard was communicated to Lanegan in February of 2005 and again in September of 2009. Lanegan's lawsuit was filed over ten years after the "harm" in this case (Unum's decision to award benefits to his sons), and is certainly untimely.

Lanegan next argues that his cause of action cannot accrue until his administrative remedies are fully exhausted, which he claims did not occur until April 14, 2015, when Unum denied his appeal as untimely. However, this argument must fail, as Lanegan cannot be permitted to profit from his delay, procrastination and failure to timely exhaust and pursue administrative remedies.

Because he did not attempt to appeal Unum's 2005 (or 2009) denial of his claim to benefits until 2015, Lanegan argues the statute of limitations did not begin to run until 2015 when Unum denied his appeal. This argument is contrary to the terms of the Policies which require "written notice and proof of claim must be sent no later than 90 days after the date of death." (App. at 6 and 44.) The Policies also provide "[i]f it is not possible to give proof within these time limits, it must be given no later than 1 year after the proof is required as specified above." (Id.) Lanegan neither claimed benefits nor objected to Unum's decision to award benefits to his sons within the deadline. Therefore, he cannot use his own failure to comply with the Policies and supply a timely proof of claim as a means to toll the statute of limitations. See Stallings v. IBM Corp., 2009 WL 2905471 (D.N.J. Sept. 8, 2009) (finding that a plaintiff who claimed the statute of limitations never began to run because "proof" of disability had not been submitted as required by the policy could not avoid application of the statute of limitations.)

In support of his argument that administrative remedies must be exhausted before the statute of limitations begins to run, Lanegan cites to Rumpf v. Metropolitan Life Inc.

Co., 2010 WL 2902543 (E.D. Pa., July 23, 2010). The district court in Rumpf believed

that running the statute of limitations before the plaintiff exhausted her administrative

appeals would be "a miscarriage of justice." 2010 WL 2902543, at *8. The Rumpf court,

however, conceded that other cases in the Third Circuit do not provide such equitable

relief and stated that "[c]aselaw within the Third Circuit ... suggests that the exhaustion of

administrative remedies ... may not likewise be required before such a claim can accrue."

Id. at * 7; see Klimowicz v. Unum Life Ins. Co. of America, 296 F. App'x 248, 251 (3d

Cir. 2008) (finding that claim accrued either at the time specified by contractual

limitations or at the time the plaintiff was first notified of his benefits, both of which

occurred before the plaintiff's appeals); Grasselino v. First Unum Life Ins. Co, 2008 WL

5416403, at * 4–5 (D.N.J. Dec.22, 2008) (finding that claim accrued either on the date of

first denial of benefits or date of later approval of some benefits even though the plaintiff

had not exhausted his administrative remedies). It also appears that the conclusions of the

Rumpf court were rejected by the Supreme Court in Heimeshoff v. Hartford Life & Acc.

Ins. Co., 134 S.Ct. 604 (2013), where the Court found that a Plan's limitations period was

not tolled while administrative remedies were being pursued, holding that that a

participant and an ERISA plan may agree by contract to a particular limitations period,

even one that starts to run before the cause of action accrues, as long as the period is

reasonable. 134 S. Ct. 604, 610 (2013).

     Lastly, Rumpf is distinguishable from the current matter as Plaintiff in that case

pursued administrative remedies before the statute of limitations expired. Here, Lanegan

submitted his appeal in 2015, long after Unum's clear repudiation of his claim in 2005 or

2009. The mere fact that Unum considered Lanegan's appeal in 2015, long after the

statute of limitations had run, does nothing to toll the statute of limitations. See Stafford v. E.I. Dupont De Nemours, 27 Fed. Appx. 137, 140 (3d Cir. 2002) (finding that plan's limitation period was not tolled due to the fact that administrator's procedure allowed participants to attempt to reopen their cases if new information came to light.) In fact, under Plaintiff's argument, once could try to defeat the statute of limitations by filing some sort of administrative process after the statute had run.

At oral argument in this matter, Lanegan for the first time argued that even if the claims brought on behalf of himself individually are untimely, the claims brought on behalf of his father's Estate are not. I requested supplemental briefing on this issue, and after a review of the briefs and relevant case law, find that Plaintiff's suit, whether brought individually or on behalf of his father's estate, is barred by the applicable statute of limitations.

Basically, Plaintiff argues that the estate of a plan participant, such as the Estate of Plaintiff's father, is a proper plaintiff in this matter and that in his capacity as Administrator/Executor of his father's estate, Plaintiff's suit was timely filed because "the Estate is entitled to have its rights under ERISA clarified by this Court." (See Docket No. 38, p. 2.) However, I find that even if the Estate is a plan participant or beneficiary under ERISA, its claims are still time-barred.

Courts routinely require estates acting as plaintiffs in ERISA cases to satisfy the applicable statutes of limitations. For example, in Stallings v. IBM Corp., 2009 WL 2905471 (D.N.J. Sept. 8, 2009), plaintiffs, co-executrixes of the estate of their mother, brought suit alleging, *inter alia*, violations of ERISA based on Defendants' denial of the decedent's disability benefits. The court found plaintiffs' claim to be time-barred because

the Plan had informed the decedent, who was the actual plan participant, that her claim was denied over two years before her executors filed suit. Id. at *8. Accordingly, the executors' claim was clearly repudiated when their decedent received the denial from the Plan; the executors did not receive additional time to file suit against the Plan because an estate was involved.

Further, in Estate of Jennings v. Delta Air Lines, Inc., 2016 WL 3537197 (D.N.J. June 28, 2016), a decedent's widow, individually and as Administratrix, brought a breach of fiduciary duty claim against decedent's former employer, claiming that it breached its fiduciary duties by failing to pay decedent's life insurance premiums. The court found this claim to be time-barred because the Administratrix herself had actual knowledge of the breach more than three years before the suit was filed. Id. at *4. As pointed out by Defendant Unum, this case is instructive because the Estate's claim was barred based on actual knowledge the decedent's wife acquired before she even became Administratrix, unlike Lanegan, who was apparently acting as Personal Representative of his father's estate by August 2005, at the latest (Compl at ¶ 1, Ex. O.) Therefore, the Estate was on notice of Unum's clear repudiation in September of 2009, at the latest, if not in February of 2005.

It would be improper for this Court to allow Lanegan to circumvent the application of the statute of limitations in this matter by finding that a different statute of limitations should apply to the Estate. Notably, Lanegan has cited to no case that stands for the proposition that a different statute of limitations should apply to ERISA actions in which an Estate is the plaintiff. Accordingly, the claims of either Lanegan individually, or of the Estate, are untimely and must be dismissed.

**B.  Claims for Breach of Fiduciary Duty**

A claim for breach of fiduciary duty under ERISA may not be commenced after the earlier of:

> (1)      Six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach, or

> (2)      Three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation.

29 U.S.C. § 1113. Lanegan thus had the shorter of the two periods, a six year period measured from the violation, or a three year period if he had "actual knowledge" of the breach, to file suit. Ranke v. Sanofi-Synthelabo Inc., 436 F.3d 197, 201 (3d Cir. 2006). Lanegan's breach of fiduciary duty claim is barred under either standard.

First, the "date of the last action which constituted a part of the breach or violation" occurred in either 2005, when Unum informed Lanegan it was awarding benefits to his son, or to be generous, in 2009, when Unum informed Lanegan that his sons were properly named as beneficiaries pursuant to a January of 2005 beneficiary election form. Therefore, Lanegan should have filed his breach of fiduciary duty claim by 2011, or at the latest, September of 2015. Yet he did not file the instant action until April of 2016.

Further, Lanegan's breach of fiduciary duty claim is barred by the three year statute of limitations based on his "actual knowledge" of the alleged breach in either February of 2005 or September of 2009. Unum advised Lanegan in February of 2005, and at the latest, September of 2009, that he would not be receiving death benefits under his father's policies. This is sufficient to trigger "actual knowledge" under 29 U.S.C. § 1113. See Koert v. GE Group Life Assur. Co., 231 Fed. Appx. 117, 121 (3d Cir. 2007)

(finding in a breach of fiduciary duty ERISA claim that "[w]hen a fiduciary makes an outright repudiation of its obligation to pay its beneficiary . . . 'it is reasonable to expect that the statute of limitations began to run at that point.'") Lanegan should have filed his breach of fiduciary duty claims by September of 2012 at the very latest and instead, waited until April of 2016. It is truly unfathomable that Plaintiff waited as long as he did to file the instant lawsuit. Accordingly, this claim is untimely and must be dismissed.

### C.  State Law Claims

In addition to his ERISA claims, Lanegan asserts state law claims for breach of fiduciary duty, tortious interference with contractual relations, and alleged violations of the Pennsylvania Wage Payment and Collection Law and Unfair Trade Practices and Consumer Protection Law. These state law claims are preempted by ERISA's statutory preemption provisions and must be dismissed.

State law claims are preempted if "they are premised on the existence of the plan and require interpreting the plan's terms." Menkes v. Prudential Ins. Co. of America, 762 F.3d 285, 294 (3d Cir. 2014). As Lanegan's state law claims "stem from how defendants handled [his] ERISA-governed" benefits, the claims are preempted. See Friedland v. Unum Group, 50 F.Supp. 3d 598, 603 (D.Del. 2014). As Lanegan's state law claims plainly relate to the Plan and its benefits, they are therefore preempted under ERISA's express preemption provision and must be dismissed with prejudice.

V.       **<u>CONCLUSION</u>**

For the foregoing reasons, Defendants' Motions to Dismiss Plaintiff's Complaint are granted and this matter is dismissed. [1]

---

[1] Plaintiff also filed a Motion to Disqualify Counsel for Defendant Freeman and Advanced Billing, LLC (Docket No. 27). As this matter is being dismissed due to Lanegan's failure to comply with the statute of limitations, this motion is denied as moot.